NONCONFIDENTIAL
Nos. 2013-1150, -1182

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

APPLE INC.,

*Plaintiff-Appellant,*

— v. —

MOTOROLA MOBILITY LLC,

*Defendant-Cross-Appellant.*

_____

Appeals from the United States District Court for the Western District
of Wisconsin in No. 11-CV-0178, Senior Judge Barbara B. Crabb

_____

**RESPONSE AND REPLY BRIEF OF
PLAINTIFF-APPELLANT APPLE INC.**

_____

Matthew D. Powers
Tensegrity Law Group LLC
555 Twin Dolphin Drive
Suite 360
Redwood Shores, CA 94065

E. Joshua Rosenkranz
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Mark S. Davies
Rachel M. McKenzie
Rachel Wainer Apter
Daniel Habib
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF INTEREST

Counsel for appellant certify the following:

1.    We represent APPLE INC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented:  Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented:  None.  Apple Inc. has no parent corporation.  According to Apple's Proxy Statement filed with the United States Securities and Exchange Commission in January 2013, there are no beneficial owners that hold more than 10% of Apple's outstanding common stock.

4.    The names of all law firms and the partners or associates that appeared for party or amicus now represented in trial court or agency or are expected to appear in this court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP:

E. Joshua Rosenkranz
Mark S. Davies
Rachel M. McKenzie
Rachel Wainer Apter

i

Daniel Habib

WEIL GOTSHAL & MANGES LLP:

Carrie Anderson
Mark G. Davis (no longer with the firm)
Penny Reid (no longer with the firm)

COVINGTON & BURLING LLP:

Krzysztof Bebenek
Matthew John Connolly
Samuel F. Ernst (no longer with the firm)
Robert D. Fram
Deborah Ann Garza
Danielle Luce Goldstein
Christine Saunders Haskett
Robert T. Haslam
Cortlin Hall Lannin
Richard Anthony Lopez
Charlin Lu
Jason Raofield
Stephen William Rodger (no longer with the firm)
Nathan Evans Shafroth
Winslow B. Taub
Robert Joseph Williams

TENSEGRITY LAW GROUP LLP:

Steven S. Cherensky
Paul T. Ehrlich
Azra Hadzimehmedovic
Matthew D. Powers

GODFREY & KAHN, S.C.:

James D. Peterson
Bryan J. Cahill

CETRA LAW FIRM, LLC

Catherine Cetrangolo

Date: December 19, 2013              Respectfully submitted,

                                     ORRICK, HERRINGTON &
                                     SUTCLIFFE LLP

                                     By: /s/ E. Joshua Rosenkranz
                                     *Attorney for Plaintiff-Appellant*

iii

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. vii

TABLE OF ABBREVIATIONS ........................................................ xiv

INTRODUCTION .............................................................................. 1

REPLY ARGUMENT ......................................................................... 3

I.   THE *NOERR-PENNINGTON* DOCTRINE DOES NOT
     SHIELD MOTOROLA'S DECEPTION OF STANDARD-
     SETTING ORGANIZATIONS TO ABUSE ITS RESULTING
     MARKET POWER ...................................................................... 3

     A.   Apple's Antitrust Claim Is, And Has Always Been,
          Focused On Motorola's Deceptive Conduct Before The
          SSOs .................................................................................. 4

     B.   Apple's Claim For Injunctive Relief Properly Rests On
          A Showing Of "Threatened Loss" .......................................... 7

     C.   Apple's Claim For Damages Properly Rests On A
          Showing Of Actual Litigation Expenses And Actual
          Uncertainty ...................................................................... 12

II.  THE DISTRICT COURT ABUSED ITS DISCRETION IN
     DISMISSING APPLE'S BREACH OF CONTRACT CLAIMS ..... 13

     A.   Wisconsin Contract Law Supports Specific
          Performance ...................................................................... 15

     B.   Motorola's Policy Arguments, Premised On The Notion
          Of An "Unwilling Licensee," Are Meritless ........................ 22

     C.   Apple Does Not Seek An Advisory Opinion .......................... 29

III. THE DISTRICT COURT CORRECTLY REJECTED
     MOTOROLA'S ALTERNATIVE GROUNDS FOR
     AFFIRMANCE ........................................................................ 33

     A.   Motorola's Commitments To ETSI And IEEE Are
          Definite And Enforceable ................................................... 33

iv

1.  Both categories of contractual commitment are definite and enforceable ................................. 35

2.  Motorola's policy arguments do not excuse its breach .......................................................... 42

B.  Apple May Enforce Motorola's Contracts With IEEE And ETSI ................................................. 43

C.  The *Noerr-Pennington* Doctrine Does Not Bar Apple's Breach Of Contract Claims ..................... 46

D.  Apple Has Standing ............................................ 50

E.  Apple's Claims Are Ripe .................................... 52

IV.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING APPLE'S DECLARATORY JUDGMENT CLAIMS ............................................................. 54

A.  Declaring A FRAND Rate, Or Declaring That Motorola's Offer Was Not FRAND, Would Have Resolved Uncertainty And Advanced The Parties' Licensing Negotiations ........................................ 54

B.  The District Court's Dismissal Of Apple's Patent Misuse Claim Was Based On Erroneous Conclusions Of Law ............................................................. 57

V.  THIS COURT HAS EXCLUSIVE APPELLATE JURISDICTION BECAUSE APPLE'S DECLARATORY JUDGMENT CLAIMS ARISE UNDER FEDERAL PATENT LAW AND RAISE PATENT-LAW QUESTIONS ......................... 58

SUMMARY OF CROSS-APPEAL ARGUMENT ................................... 63

CROSS-APPEAL ARGUMENT ............................................... 63

DISMISSAL WITH PREJUDICE IS INAPPROPRIATE BECAUSE THE DISTRICT COURT DID NOT REACH THE MERITS OF APPLE'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS ................................... 63

CONCLUSION ....................................................... 68

Material has been deleted from pages 11 and 56 of the nonconfidential Response and Reply Brief of Plaintiff-Appellant Apple Inc.  This material is deemed confidential information pursuant to the Protective Order entered in *In re Certain Wireless Commc'n Devices, Portable Music and Data Processing Devices, Computers and Components Thereof* ITC Inv. No. 337-TA-745, dated November 3, 2010, and the sealing orders entered in the district court action below.  *See* ECF Nos. 18, 46, 58, 66, 78 and 84.  The omitted material contains confidential deposition testimony, confidential licensing information and confidential business information.

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*ABB Inc. v. Cooper Indus., LLC,*
635 F.3d 1345 (Fed. Cir. 2011) .......................................................... 60

*Allied Tube & Conduit Corp. v. United States,*
486 U.S. 492 (1988) ................................................................... 63

*Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982) ................................................................... 25

*ASARCO Inc. v. Kadish,*
490 U.S. 605 (1989) ................................................................... 29

*B. Braun Med., Inc. v. Abbott Labs.,*
124 F.3d 1419 (Fed. Cir. 1997) ........................................................ 57

*Barnhill v. United States,*
11 F.3d 1360 (7th Cir. 1993) ........................................................... 63

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,*
152 F.3d 588 (7th Cir. 1998) ............................................................. 9

*Bonzel v. Pfizer, Inc.,*
439 F.3d 1358 (Fed. Cir. 2006) ........................................................ 59

*Broadcom Corp. v. Qualcomm, Inc.,*
501 F.3d 297 (3d Cir. 2007) ......................................................... 4, 5

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
479 U.S. 104 (1986) .................................................................... 9

*Cherry v. FCC,*
641 F.3d 494 (D.C. Cir. 2011) ........................................................ 52

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
333 U.S. 103 (1948) ............................................................... 30, 31

*Chicago United Indus. v. City of Chicago,*
   445 F.3d 940 (7th Cir. 2006) ............................................................ 17

*Clinton v. Acequia, Inc.,*
   94 F.3d 568 (9th Cir. 1996) ....................................................... 53, 54

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
   690 F.2d 1240 (9th Cir. 1982) ............................................................ 7

*D'Amato v. Wisconsin Gas Co.,*
   760 F.2d 1474 (7th Cir. 1985) ......................................................... 46

*Domka v. Portage County,*
   523 F.3d 776 (7th Cir. 2008) ........................................................... 40

*eBay, Inc. v. MercExchange, LLC,*
   547 U.S. 388 (2006) ......................................................................... 18

*Franzoni v. Hartmarx Corp.,*
   300 F.3d 767 (7th Cir. 2002) ........................................................... 64

*H&R Block E. Enters., Inc. v. Raskin,*
   591 F.3d 718 (4th Cir. 2010) ........................................................... 31

*Harris v. Quinn,*
   656 F.3d 692 (7th Cir. 2011) ........................................................... 65

*Hewitt v. Helms,*
   482 U.S. 755 (1987) ................................................................... 29, 30

*Hines v. Sec'y of HHS,*
   940 F.2d 1518 (Fed. Cir. 1991) ....................................................... 32

*Hinrichs v. Whitburn,*
   975 F.2d 1329 (7th Cir. 1992) ......................................................... 53

*Hynix Semiconductor Inc. v. Rambus, Inc.,*
   527 F. Supp. 2d 1084 (2007) ........................................................... 12

*Imation Corp. v. Koninklijke Philips Elecs. N.V.,*
   586 F.3d 980 (Fed. Cir. 2009) ......................................................... 58

*In re Innovatio IP Ventures, LLC Patent Litig.*,
No. 11-C-9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ........... 19, 20

*In re Innovatio IP Ventures, LLC Patent Litig.*,
921 F. Supp. 2d 903 (N.D. Ill. 2013) .................................................. 44

*Intergraph Corp. v. Intel Corp.*,
195 F.3d 1346 (Fed. Cir. 1999) ............................................................ 9

*Int'l Kennel Club, Inc. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988) ........................................................... 66

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ............................................................................ 60

*Lab. Corp. of Am. v. Metabolite Labs., Inc.*,
599 F.3d 1277  (Fed. Cir. 2010) ................................................... 59, 61

*Larson v. Valente*,
456 U.S. 228 (1982) ............................................................................ 51

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ............................................................. 20

*Estate of Luster v. Allstate Ins. Co.*,
598 F.3d 903 (7th Cir. 2010) ............................................................. 16

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ............................................................................ 55

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ............................................................................ 51

*Med. Assurance Co., Inc. v. Hellman*,
610 F.3d 371 (7th Cir. 2010) ............................................................. 58

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ............................................................................ 55

*Microsoft Corp. v. Motorola, Inc.*,
864 F. Supp. 2d. 1023 (W.D. Wash. 2012) ........................................ 44

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823-JLR, 2013 WL 21112174
  (W.D. Wash. Apr. 25, 2013) ........................................................ 19, 22

*Microwave Acquisition Corp. v. FCC,*
  145 F.3d 1410 (D.C. Cir. 1998) ........................................................ 52

*Mt. Sinai Hosp. Med. Ctr. v. Shalala,*
  196 F.3d 703 (7th Cir. 1999) ........................................................... 47

*New West, L.P. v. City of Joliet,*
  491 F.3d 717 (7th Cir. 2007) ........................................................... 48

*Powertech Tech., Inc. v. Tessera, Inc.,*
  872 F. Supp. 2d 924 (N.D. Cal. 2012) ............................................... 47

*Qualcomm Inc. v. Broadcom Corp.,*
  548 F.3d 1004 (Fed. Cir. 2008) ........................................................ 41

*Rambus Inc. v. Infineon Techs. Ag,*
  318 F.3d 1081 (Fed. Cir. 2003) ........................................................ 42

*Realtek Semiconductor Corp. v. LSI Corp.,*
  No. CV-12-03451, 2012 WL 4845628 (N.D. Cal. Oct. 10, 2012)......... 26

*Rose Acre Farms, Inc. v. Madigan,*
  956 F.2d 670 (7th Cir. 1992) ........................................................... 34

*SanDisk Corp. v. STMicroelectronics, Inc.,*
  480 F.3d 1372 (Fed. Cir. 2007) ........................................................ 54

*Sicom Sys. Ltd. v. Agilent Techs., Inc.,*
  427 F.3d 971 (Fed. Cir. 2005) .......................................................... 67

*In re Special Grand Jury 89-2,*
  450 F.3d 1159 (10th Cir. 2006) ........................................................ 30

*Steffel v. Thompson,*
  415 U.S. 452 (1974) ........................................................................ 65

*Tarpley v. Keistler,*
  188 F.3d 788 (7th Cir. 1999) ........................................................... 48

x

*TAS Distrib. Co. v. Cummins Engine Co.,*
   491 F.3d 625 (7th Cir. 2007) ........................................................ 16

*Textile Prods., Inc. v. Mead Corp.,*
   134 F.3d 1481 (Fed. Cir. 1988) ..................................................... 67

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
   546 F.3d 991 (9th Cir. 2008) ......................................................... 48

*Univ. of Pittsburgh v. Varian Med. Sys.,*
   569 F.3d 1328 (Fed. Cir. 2009) ................................................ 64, 65

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.,*
   858 F.2d 1075 (5th Cir. 1988) ....................................................... 48

*Wells Fargo Bank, N.A. v. Younan Props.,*
   ___ F.3d ___, 2013 WL 6326597 (7th Cir. Dec. 5, 2013) .................... 66

*Wis. Cent., Ltd. v. Shannon,*
   539 F.3d 751 (7th Cir. 2008) ......................................................... 53

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
   395 U.S. 100 (1969) ......................................................................... 8

## STATE CASES

*Ash Park, LLC v. Alexander & Bishop, Ltd.,*
   2010 WI 44, 783 N.W.2d 294 ........................................................ 17

*Clear View Estates, Inc. v. Veitch,*
   227 N.W.2d 84 (Wis. 1975) ....................................................... 38, 39

*Dells Paper & Pulp Co. v. Willow River Lumber Co.,*
   173 N.W. 317 (Wis. 1919) ............................................................. 19

*Dunlop v. Laitsch,*
   113 N.W.2d 551 (Wis. 1962) ......................................................... 36

*Fleischman v. Zimmerman,*
   45 N.W.2d 616 (Wis. 1951) ........................................................... 36

*Fontaine v. Brown Cnty. Motors Co.*,
29 N.W.2d 744 (Wis. 1947) ................................................ 37

*Gerruth Realty Co. v. Pire*,
115 N.W.2d 557 (Wis. 1962) .............................................. 36

*Johnson Controls, Inc. v. London Market*,
2010 WI 52, 784 N.W.2d 579 ............................................ 40

*Kontowicz v. Am. Std. Ins. Co.*,
2006 WI 48, 714 N.W.2d 104 ............................................ 45

*Kurth v. Hauser*,
55 N.W.2d 367 (Wis. 1952) ................................................ 17

*Nodolf v. Nelson*,
309 N.W.2d 397 (Wis. Ct. App. 1981) ............................... 36

*Pappas v. Jack O. A. Nelson Agency, Inc.*,
260 N.W.2d 721 (Wis. 1978) .............................................. 43

*Schilling by Foy v. Emp'rs Mut. Cas. Co.*,
569 N.W.2d 776 (Wis. Ct. App. 1997) ............................... 45

*Sussex Tool & Supply, Inc. v. Mainline Sewer and Water, Inc.*,
605 N.W.2d. 620 (Wis. Ct. App. 1999) ......................... 45, 46

*Valley Iron Works Mfg. Co. v. Goodrick*,
78 N.W. 1096 (Wis. 1899) ................................................. 17

*Welch v. Chippewa Sales Co.*,
31 N.W.2d 170 (Wis. 1948) ................................................ 17

## FEDERAL STATUTES

15 U.S.C. § 15 .......................................................................... 9

15 U.S.C. § 26 ............................................................... 7, 8, 10

19 U.S.C. § 1337 .................................................................... 61

28 U.S.C. § 1295 .................................................................... 58

28 U.S.C. § 1338 ..................................................................... 58

35 U.S.C. § 281 ...................................................................... 67

35 U.S.C. § 282 ...................................................................... 26

35 U.S.C. § 285 ...................................................................... 31

### ADMINISTRATIVE AGENCY DECISIONS AND MATERIALS

*In re Certain Gaming and Entm't Consoles, Related Software,*
  *and Components Thereof,*
  ITC Inv. No. 337-TA-752 (Apr. 23, 2012) ........................... 22

Decision and Order, *In re Google Inc.,*
  Dkt. No. C-4410, FTC File No. 1210120 (July 23, 2013) ................... 32

Modified Complaint, *In re Google Inc.,*
  Dkt. No. C-4410, FTC File No. 1210120 (July 23, 2013) ............. 21, 22

Statement of the Commission, *In re Google Inc.,*
  Dkt. No. C-4410, FTC File No. 1210120 (Jan. 3, 2013) ..................... 22

### OTHER AUTHORITIES

Anne Layne-Farrar, *Assessing IPR Disclosure Within Standard Setting:*
  *An ICT Case Study* (Charles River Assocs. Nov. 28, 2011),
  *available at* http://ssrn.com/abstract=1912198 ................................. 40

Appellants' Opp'n To Microsoft's Mot. To Transfer,
  *Microsoft Corp. v. Motorola, Inc.,*
  No. 14-1089, Dkt. No. 19 (Fed. Cir. Dec. 5, 2013) ............................. 62

Chisum on Patents (2012) ........................................................ 58

Herbert Hovenkamp et al.,
  IP and Antitrust (2d ed. Supp. 2012) ............................................ 5, 12

Restatement (Second) of Contracts (1981) ............................. 19

Wright et al., Federal Practice and Procedure (3d ed. 2008) ................. 31

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| A_____ | Cited page(s) of the Joint Appendix |
| AB | Apple Opening Brief |
| Apple | Apple Inc. |
| FTC | Federal Trade Commission |
| FRAND | Fair, reasonable, and non-discriminatory |
| ITC | International Trade Commission |
| MB | Motorola Response and Opening Brief |
| Motorola | Motorola Mobility LLC |
| SEP | Standard-essential patent |
| SSO | Standard-setting organization |
| '193 patent | U.S. Patent No. 5,572,193 |
| '223 patent | U.S. Patent No. 5,636,223 |
| '230 patent | U.S. Patent No. 5,490,230 |
| '559 patent | U.S. Patent No. 6,175,559 |
| '697 patent | U.S. Patent No. 6,246,697 |
| '712 patent | U.S. Patent No. 5,319,712 |
| '898 patent | U.S. Patent No. 6,359,898 |

# INTRODUCTION

With this lawsuit, Apple seeks only what Motorola promised: an offer to license its patents on fair and nondiscriminatory terms. Apple seeks to do with that offer what all its competitors do when they get a FRAND offer: assess it against the options. One option is to continue to fend off Motorola's infringement allegations (which thus far have failed dismally). Another option is to accept the offer if it makes economic sense. In either case, Apple was entitled to a trial to prove that Motorola's deceptive conduct violated antitrust laws and its contractual obligations, and to secure the offer that Motorola had promised.

On the antitrust claims, Motorola's response focuses on the wrong conduct. Apple has demonstrated that Motorola violated the Sherman Act by deceiving the SSOs—not by bringing infringement suits years later. The First Amendment does not protect conduct that attains, and then exploits, monopoly power through deceit. Motorola also argues that Apple failed to prove actual injury, but fails to acknowledge the black letter principle that injunctive relief lies against *threatened* loss from antitrust violations, not just actual loss.

On the breach of contract claims, Motorola concedes that "the FRAND commitments made by Motorola are enforceable." MB 3. And Motorola does not contest that Apple presented ample evidence of the unreasonableness of Motorola's royalty demands. Instead, Motorola's primary defense of the district court's last-minute decision to scuttle the trial substitutes ad hominem for analysis. Motorola repeatedly calls Apple an "unwilling licensee." The moniker is both false and incoherent. Apple has been requesting a license for six years. It filed this lawsuit because Motorola is an *unwilling licensor*—or, at least, unwilling to license at a rate that is fair and nondiscriminatory. Motorola can try to convince a fact finder that Apple is the unreasonable one. But at this juncture Motorola has proven no such thing and is not entitled to assume it as a basis for denying Apple a trial.

At points, Motorola uses the epithet "unwilling licensee" to fault Apple for being unwilling to buy the license *before learning the price*. But neither law, contract, nor common sense required Apple to issue a blank check as a condition of forcing Motorola to do what it contractually committed to do: make a fair offer.

2

Motorola shifts from obfuscation to fiction when it states (at 1) that the "key fact at the core of this case" is that Apple is an infringer. There is not even an allegation, much less a determination, of infringement by Apple here. In fact, in the course of years of litigation asserting eight declared-essential patents in multiple U.S. jurisdictions, Motorola has never—not once—succeeded in proving that Apple has infringed a valid patent. This is an appeal from the district court's decision to dismiss, pretrial, Apple's claims that Motorola's actions violated the antitrust laws and contractual commitments that an entire industry relies upon. For purposes of this appeal, Apple is entitled to all factual inferences in its favor. The "key facts" for purposes of this appeal are that Motorola deceived the SSOs and refused to offer Apple a FRAND rate.

## REPLY ARGUMENT

## I.    THE *NOERR-PENNINGTON* DOCTRINE DOES NOT SHIELD MOTOROLA'S DECEPTION OF STANDARD-SETTING ORGANIZATIONS TO ABUSE ITS RESULTING MARKET POWER

Apple is suing Motorola for deceiving the SSOs, not for filing a lawsuit. But Motorola fixates on the latter and barely acknowledges the former, because it confuses the *conduct* challenged (which is

3

indisputably an antitrust violation) with the resulting *harm* (which, alone, is not). § I.A. As to the harm, Motorola's brief rises and falls on the assertion that Apple "failed to produce evidence that its antitrust claims were premised on any *harm* other than having to defend itself from Motorola's … patent infringement" suits. MB 28 (emphasis added). This proposition fails for two reasons. First, Apple can prove its antitrust claim—and secure injunctive relief against future harm—without proving any harm *already* suffered. § I.B. Second, even to prove damages, litigation costs are enough, and Apple introduced evidence of other harm anyway. § I.C.

## A. Apple's Antitrust Claim Is, And Has Always Been, Focused On Motorola's Deceptive Conduct Before The SSOs

Focusing on the claim Apple has actually made, Motorola does not dispute that Apple presented ample evidence that Motorola's conduct before the SSOs violated the antitrust laws. Our opening brief explained (at 31-36) that the district court was correct to hold (at A48-49) that it is unlawful for a business to deceive competitors into granting it market power and then to use that market power to stifle competition. AB 35 (discussing *Broadcom Corp. v. Qualcomm, Inc.*, 501

F.3d 297 (3d Cir. 2007), and 2 Herbert Hovenkamp et al., IP and Antitrust § 35.5b2 (2d ed. Supp. 2012)).  Motorola does not contest this statement of antitrust law.  All Motorola can say on the merits of this claim is that Apple cited only "cases involv[ing] motions to dismiss [that] are limited to whether the plaintiffs had sufficiently pleaded antitrust claims."  MB 31.  That is a non sequitur, because Motorola does not dispute that Apple adduced ample evidence to prove Motorola did exactly what was alleged in those cases.

Beyond that, Motorola merely asserts that Apple's focus on Motorola's conduct before the SSOs is "belated," MB 30 n.1, or "new," MB 30.  As our opening brief documents at length (at 20, 40), and Motorola does not refute, there is nothing new about this focus.  It is in the complaint, which alleged that Motorola violated the antitrust laws by promising to offer FRAND licenses for patents it considered to be standard-essential, encouraging the SSOs to standardize certain technology in reliance on Motorola's FRAND promises, and then, only after the standards had been adopted, declaring its patents essential to the standards and refusing to license them on FRAND terms. A3287-89.

5

Motorola reimagines Apple's antitrust claim as one Apple never asserted, arguing "that the *Noerr-Pennington* doctrine barred Apple's antitrust … claims because those claims were directed at Motorola's litigation against Apple." MB 26 (emphasis added). But it never even tries to demonstrate any such thing about Apple's "*claims*." Instead, two pages later, Motorola shifts subtly, but tellingly, to a different proposition: that Apple "failed to produce evidence that its antitrust claims were premised on any *harm* other than having to defend itself from Motorola's … patent infringement" suits. MB 28 (emphasis added).

That is both irrelevant and false, for reasons we explain below. But the more important point is that Motorola is confusing the *conduct* that violates the antitrust laws with the *harm* that arose from that conduct. Motorola does not dispute that the *Noerr-Pennington* doctrine does not immunize the *conduct* that is challenged here—misconduct before a private SSO. *Compare* AB 36 (discussing *Allied Tube & Conduit Corp. v. United States*, 486 U.S. 492 (1988)) *with* MB 26-33 (no mention of *Allied Tube*). And Motorola also appears to concede that an antitrust violation is not immunized simply because the defendant ends

6

up filing a lawsuit.  *Compare* AB 42 (discussing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1263 (9th Cir. 1982)) *with* MB 26-33 (no mention of *Clipper*).  Thus, while Motorola has done a fine job of demonstrating that Motorola did not violate the antitrust laws by filing a lawsuit, it has failed to demonstrate that Motorola is immune from antitrust liability for the misconduct Apple alleges and was prepared to prove.

### B. Apple's Claim For Injunctive Relief Properly Rests On A Showing Of "Threatened Loss"

Motorola repeatedly asserts that Apple cannot establish an antitrust claim without showing that it already "had actually suffered" an antitrust injury unrelated to Motorola's protected litigation.  MB 30; *see* MB 28 ("plaintiff must show that it has suffered an antitrust injury").  But Motorola barely acknowledges all the authorities recited in our opening brief (at 39-42) that say the opposite.

Motorola ignores section 16 of the Clayton Act (quoted at AB 33, 39), which authorizes injunctive relief "*against threatened loss* or damage by a violation of the antitrust laws, … when and under the same conditions and principles as injunctive relief against *threatened* conduct *that will cause loss or damage* is granted by courts of equity."

15 U.S.C. § 26 (emphasis added). Motorola does not explain how this could be read as anything other than a directive that "threatened loss" that "will" happen in the future warrants injunctive relief.

Motorola also flouts the Supreme Court's pronouncement that this statutory directive means that injunctive relief is "available *even though the plaintiff has not yet suffered actual injury*," as long as the plaintiff can "demonstrate a significant *threat* of injury" from an antitrust violation. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (emphasis added). Motorola argues that "in that case the plaintiff established evidence that it had actually suffered 'the type of loss that the claimed violations of the antitrust laws would be likely to cause' in one market, and that defendant's actions showed a propensity to cause similar harms elsewhere." MB 30 (quoting *Zenith*, 395 U.S. at 126). But Motorola points to nothing in *Zenith* to suggest that an injunction *may not* issue until the plaintiff has actually suffered loss, and cannot escape the Supreme Court's explicit holding that the "failure to prove the fact of injury" *does not* bar a claim for injunctive relief. 395 U.S. at 130.

In any event, *Zenith*'s holding hardly stands alone. The Supreme Court reiterated the point in *Cargill, Inc. v. Monfort of Colorado, Inc.*, observing that section 4 of the Clayton Act "requires a plaintiff to show actual injury," while section 16 "requires a showing only of 'threatened' loss or damage." 479 U.S. 104, 111 (1986). A plaintiff need prove only that he faces a significant threat of injury "for which he would … be entitled to compensation *if the injury actually occurred*," in order to obtain an injunction to neutralize the threat. *Id.* at 112 (emphasis added). More recently, the Seventh Circuit held that just because a plaintiff fails "to come up with evidence that would authorize an award of damages [under section 4] *does not* justify withholding an injunction [under section 16]." *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 591 (7th Cir. 1998) (emphasis added). And this Court explained that this is so because "[t]he salutary purpose [of section 16] is *to prevent antitrust injury before it happens*." *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1360 (Fed. Cir. 1999) (emphasis added). Not to mention the leading treatises to the same effect, which Apple quoted (at AB 39-40) but Motorola ignores.

9

In defense of the district court's conclusion that Apple must prove it has *already "suffered* an antitrust injury," A82 (emphasis added), Motorola offers three scattered assertions, which are more innuendo than argument. First, Motorola asserts that Apple sought "anti-suit injunctions barring Motorola from enforcing its patents and continuing to pursue its then-pending infringement claims in the district court and ITC," MB 29, as if to suggest that Apple never sought to enjoin the conduct directly. In truth, Apple's complaint sought an order "permanently enjoining Motorola from licensing or attempting to license its purported Essential IPR, including the Declared-Essential Patents, on non-[FRAND] terms, pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26." A3295.

Second, Motorola asserts that "Apple's economist expert [sic] suggested that Apple may incur future damages if Motorola prevails on its patent infringement claims," MB 29 (citing A8086-87), as if to suggest that the only evidence of threatened harm arose from Motorola's lawsuits. That is false. The economist is Dr. Dennis W. Carlton and his report is at A8056-88. Nothing in his report turns on whether or not Motorola decides to sue. Rather, Dr. Carlton concluded

**Confidential Material Omitted**

that █████████████████████████████████████

and that ███████████████████████████████

██████████████████████████████████████

███████████████████████ A8058-59.  Specifically,

Dr. Carlton explained that ████████████████████

██████████████████████████████████████

███████████████████████ A8082-87.

Entirely missing from Dr. Carlton's report—missing because it is not

directly relevant—is any mention of Motorola's lawsuits.

Motorola's last response is to reiterate the district court's

assertion "that Apple had produced no evidence showing that this …

'uncertainty' caused Apple to 'change its product, delay the release of

the iPhone, suffer from increased costs or lose any customers or market

share.'"  MB 32 (quoting A81-82).  But if, as demonstrated above, Apple

was not required to prove that it has *already* suffered *any* antitrust

injury, then a fortiori Apple was not required to prove that it had

already suffered a *particular sort* of antitrust injury.

### C.    Apple's Claim For Damages Properly Rests On A Showing Of Actual Litigation Expenses And Actual Uncertainty

Apple has also proven actual harm here and now—in two forms.

First, Apple has incurred litigation expenses.  Motorola has offered no response to the point in our opening brief (at 43) that because Apple submitted sufficient evidence to prove an antitrust violation and threatened harm *without reference* to Motorola's patent-infringement litigation, it is entitled to recover the costs it incurred as a result of that litigation.  Once Apple "can prove an antitrust *violation* without the use of protected petitioning," it "can recover *damages* caused by that petitioning."  1 Hovenkamp, § 11.4f; *cf. Hynix Semiconductor Inc. v. Rambus Inc.*, 527 F. Supp. 2d 1084, 1096-98 (N.D. Cal. 2007) (holding plaintiff could recover damages caused by defendant's patent litigation where plaintiff stated an antitrust claim independent of that litigation). The point should be taken as conceded.

Second, as our opening brief explained, Apple suffered, and continues to suffer, a separate harm in the form of "uncertainty created by Motorola's refusal to offer a fair, reasonable and non-discriminatory license."  A49.  Knowing the FRAND offer price would have allowed

Apple to make an informed business decision whether to design around or accept the license (or put Motorola to its burden of proving infringement). The injury to Apple caused by Motorola's failure to make a FRAND offer is the loss of critical information needed to guide key decisions. Motorola offers no response to Apple's argument and cases holding that this suffices to sustain an antitrust claim. AB 40-41. Nor has Motorola responded to our point that the antitrust laws are designed to protect the strong as well as the weak. AB 42. That Apple did not cave by "'chang[ing] its product'" or "'delay[ing] the release of the iPhone," MB 32 (quoting A81-82), does not bar Apple from pursuing Motorola's blatant antitrust violation.

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING APPLE'S BREACH OF CONTRACT CLAIMS

Motorola does not dispute the core contract law principles that support Apple's breach of contract claim: (1) Motorola made enforceable contractual commitments to the SSOs to offer FRAND rates; (2) Motorola breached those contracts if it refused to offer Apple a license at a FRAND rate; (3) Apple presented ample evidence that the rate Motorola offered was, in fact, far from FRAND; and (4) Apple may enforce the contracts if it is a third-party beneficiary. AB 45-46. Nor

13

does Motorola appear to dispute—at least not directly—the district court's key conclusion, heading into trial, on the remedy for the breach: that Apple could secure specific performance—an order directing Motorola to make an offer at a specified FRAND rate.

Motorola nevertheless defends the district court's U-turn, concluding that the remedy was no longer available once Apple indicated that it would not pre-commit to accept an offer at any price. Notably, Motorola says virtually nothing about why the ruling was correct as a matter of Wisconsin contract law. What little Motorola says about contract law is wrong. § II.A. So, too, are Motorola's policy arguments, which are based on the vague accusation that Apple is an "unwilling licensee," MB 37, and which amount to arguments to change Wisconsin law. § II.B. Beyond that, Motorola incorrectly argues that the contract claim became a request for an advisory opinion once Apple made clear that it would not accept an offer without knowing what the offer was. § II.C. We address these points in this section and, then, in Point III, dispose of Motorola's five alternative grounds for affirmance.

## A.    Wisconsin Contract Law Supports Specific Performance

Motorola's entire discussion of contract law appears in a single page (at 38-39).   On that solitary page, Motorola does not contest that Wisconsin law grants specific performance not just for parcels of real property but for all sorts of non-fungible assets.  AB 48-49.  Nor does it contest that Wisconsin law grants specific performance for *options* to purchase such non-fungible assets.  AB 50.  Motorola does not dispute that a portfolio of standard-essential patents qualifies as such a non-fungible asset, AB 50-51, nor that damages cannot substitute for the license Motorola promised to grant, AB 51-52.

Motorola's main response to all these legal points is captured in a single dismissive sentence:  "Nor does [Apple] have any support for its assertion that a non-exclusive patent license is akin to a right to exclusively possess land or some other non-fungible good."  MB 38 (citation omitted).  True, no precedent addresses that specific scenario, which means Motorola, too, has no support for the contrary position. But Apple, unlike Motorola, supported its assertion with analogous cases mentioned above—cases ordering specific performance of an *option* to purchase non-fungible stock, AB 50, and of a commitment to

15

transfer patent rights, AB 50. Motorola does not address the argument, does not offer any analogous precedents of its own, and does not even argue why the principles in the cases Apple cited should not apply to a non-exclusive license for patent rights.

Those cases are controlling. If, as we have demonstrated, a party is entitled to specific performance of a contractual obligation to offer an exclusive license to a patent, the same must be equally true of a non-exclusive license, whether the patent owner made two such promises or a universal promise. From the standpoint of each promisee—here, each standard implementer—there is no substitute for the license and no other source for the requisite IP rights. In fact, the implementer needs the license to that specific portfolio precisely *because* it has become the standard—i.e., because so many others are using the technology. When patents are essential to the standard, alternative technology just will not do.

Instead of grappling with these Wisconsin precedents, Motorola invokes generalities from other bodies of law.[1] Motorola asserts, for

------

[1] *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007) (Illinois law); *Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903 (7th Cir. 2010) (Indiana law of rescission, not specific performance);

16

example, that "'[s]pecific performance is an exceptional remedy and is normally available only when damages constitute an inadequate remedy.'" MB 37-38 (citation omitted). The Wisconsin Supreme Court disagrees: "Wisconsin courts have not restricted" specific performance "to cases in which a remedy at law is inadequate." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44 ¶ 43, 783 N.W.2d 294, 304. Rather, as our opening brief showed (at 48-50), Wisconsin law makes specific performance more liberally available, and does so as a matter of course in a wide variety of cases involving contracts for the conveyance of non-fungible goods, including patents. *See, e.g.*, *Ash Park*, 2010 WI 44 ¶¶ 41-46, 783 N.W.2d at 304-05 (contract for sale of land); *Kurth v. Hauser*, 55 N.W.2d 367, 368 (Wis. 1952) (non-publicly-traded shares of corporate stock); *Welch v. Chippewa Sales Co.*, 31 N.W.2d 170, 171 (Wis. 1948) ("personal property which has a peculiar or unique or a sentimental value"); *Valley Iron Works Mfg. Co. v. Goodrick*, 78 N.W. 1096, 1098 (Wis. 1899) (patent). Thus, while it may be true generally that "damages remain the default remedy for breach of contract," MB

---

*Chicago United Indus. v. City of Chicago*, 445 F.3d 940 (7th Cir. 2006) (federal constitutional law, not a contract case).

17

38, these cases confirm that, in Wisconsin, specific performance is the norm for non-fungible property rights like the patent rights at issue here.[2]

Even while invoking other principles that are inconsistent with Wisconsin law, Motorola is conspicuously silent about the body of non-Wisconsin law that the district court invoked. Motorola does not defend the district court's erroneous application of *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), *see* AB 59-60, or contest Apple's showing that it passes the *eBay* test anyway, *see* AB 60-61. Instead, Motorola makes only the conclusory charge that Apple "failed to show" some unspecified "predicate" for equitable relief. MB 38. Which brings us full circle. Under Wisconsin law, the only "predicate" for specific performance is inadequacy of damages—and even that is not invariably required. Apple made that showing in spades.

---

[2] One amicus observes that these cases involved grantees who were ready to exercise their options. Qualcomm Br. at 16. But that is no basis for distinction. In these cases (as in most option contract cases), the price terms were fixed, so the grantees would not have bothered to sue unless they wanted to buy. Here, the fact that the FRAND price is not specified means that Apple has to take the intermediate step of learning the price before deciding. But that practical necessity does not diminish Apple's right to the offer or its enforceability.

18

Next, Motorola argues that Apple's refusal to pre-commit to accept a FRAND rate "deprived the contract of sufficient definiteness to warrant an order for specific performance." MB 38-39. That is a play on words. The "definiteness" required before a court will order specific performance is definiteness in contract terms, not whether the contract will "definitely" be executed. *See, e.g.*, Restatement (Second) of Contracts § 362 & cmt. b (1981). "[T]he terms of the contract" must only be "sufficiently certain to enable the order to be drafted with precision because of the availability of the contempt power for disobedience." *Id.* cmt. b; *see, e.g.*, *Dells Paper & Pulp Co. v. Willow River Lumber Co.*, 173 N.W. 317, 323 (Wis. 1919).

The definiteness requirement is satisfied here. As the district court understood, A117, there is nothing indefinite about the order Apple sought: "Motorola shall offer Apple a license to its SEP portfolio at a rate of $x.xx per device." Other courts have issued exactly such orders. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823-JLR, 2013 WL 2111217, at *4 (W.D. Wash. Apr. 25, 2013) (FRAND rate and range for Motorola's H.264 video coding and 802.11 WiFi declared-essential portfolios); *In re Innovatio IP Ventures, LLC Patent Litig.*, No.

19

11-C-9308, 2013 WL 5593609, at *3 (N.D. Ill. Oct. 3, 2013) (FRAND rate for Innovatio's 802.11 declared-essential portfolio).  Indeed, ETSI itself recognizes that a court is the forum for resolving FRAND disputes. A11,975.

Motorola does not dispute that figuring out a royalty rate based upon current licensing conduct and other benchmarks is well within the ken of a court.  *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79-80 (Fed. Cir. 2012).  In fact, Motorola appears to concede that this was a suitable job for the district court *until* "Apple refused to commit to accepting that rate."  MB 38.  But that did not change the contract's definiteness or the district court's role.  The only reason Motorola gives for arguing that this development somehow changed the picture was that Apple "demand[ed] that a court set out every FRAND license term and condition, starting with the royalty." MB 39.  Apple never made any such demand.  With regard to specific performance, its demand started *and ended* with the royalty.  Apple's insistence on assessing an offer before accepting it did not convert the request to set a FRAND offer rate into a demand to hammer out all other licensing terms.

20

In the same sentence, Motorola also asserts that "[t]he terms of the ETSI and IEEE policies … do not expressly contemplate the present situation, where one party refuses to negotiate in good faith." MB 39. Motorola bases its assertion of bad faith on nothing more than the fact that Apple responded to one demand with evidence that the demand was unreasonable and a request for a reasonable rate, rather than with a counteroffer. AB 15-19. But the refusal to dignify an unreasonable offer hardly amounts to a bad faith negotiation stance. More to the point, in the present posture, it certainly does not establish bad faith as a matter of law.

Motorola is, of course, free to argue to a fact finder that Apple acted in bad faith because Motorola's original offer was not, in fact, unreasonable. But as noted above, Motorola has not contested that Apple presented ample evidence that Motorola's demand was unreasonable. AB 15-19. When a fact finder so rules, it will join a chorus of others who have concluded that Motorola has violated its FRAND obligations. A federal agency charged Motorola with systematic violations of its SSO commitments. Modified Complaint at ¶¶ 1, 31, *In re Google, Inc.,* Dkt. No. C-4410, FTC File No. 1210120,

(July 23, 2013); Statement of the Commission at 1, *In re Google, Inc.* (Jan. 3, 2013).

More recently, after a trial, Judge Robart issued a detailed opinion finding that Motorola demanded a rate for its 802.11 portfolio that was 125 times what was reasonable. *See Microsoft Corp.*, 2013 WL 2111217, at \*65, 100 (Motorola sought about $4.50 per unit for license to its 802.11 portfolio, while district court set FRAND rate at $0.035 per unit), *appeal docketed*, No. 14-1089 (Fed. Cir. Nov. 15, 2013); *see also In re Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, ITC Inv. No. 337-TA-752, at 302-03 (Apr. 23, 2012) (ITC ALJ's determination that Motorola made greater-than-FRAND demands for licenses to its 802.11 and H.264 declared-essential portfolios). This Court should demand more than Motorola's blithe assurance that, this time around, the rate it quoted was reasonable and Apple's response was not.

## B. Motorola's Policy Arguments, Premised On The Notion Of An "Unwilling Licensee," Are Meritless

Motorola and its amici press a variety of policy arguments for departing from settled Wisconsin law. They seem to forget that this Court does not sit to rewrite state contract law to advance one party's

view of good policy. In any event, Motorola's policy arguments are meritless.

The policy arguments revolve around two flawed premises. The first is the notion repeated throughout Motorola's brief that Apple was an "unwilling licensee." MB 2, 3, 4, 22, 33, 37, 39, 41, 42, 52, 54, 55, 60. Motorola never defines the term nor explains its legal relevance. At some points, "unwilling licensee" seems to refer to Apple's negotiating behavior before it brought this suit—as a shorthand for the assertion, addressed immediately above, that Apple did not negotiate in good faith. The moniker does not fit. Apple has been seeking a license for six years. Surely, a reasonable juror could conclude that Apple had to file this lawsuit because *Motorola* is an unwilling *licensor*—or at least unwilling to grant a license at a rate that is fair and nondiscriminatory.

At other points, however, Motorola appears to be using the term "unwilling licensee" to capture the idea that "Apple[] refus[ed] to be bound" to accept a license once the court determines the FRAND rate. MB 37. This, too, is inapt. Apple *is* willing to purchase a license. It just needs to know the price in order to decide whether to forgo the

right any business has to reject the offer and fight any ensuing infringement allegations on the merits.

Implicit in the latter definition is the second mistaken premise, which also pervades its brief. Contrary to Motorola's assertion, Apple is not seeking a ruling that binds only Motorola and not Apple. Once the district court announces a FRAND rate, that judgment will bind both parties alike. Apple may decide not to accept the offer. But if Apple wants a license, Apple, like Motorola, will be bound to accept the court-determined rate as FRAND. To be sure, either side is free to seek other licensing terms or limitations in return for a price concession (upwards or downwards). And the ultimate contract might involve cross-licenses, in which the court-determined FRAND rate is offset against the negotiated value of Apple's patents. But neither party is free to say, "The court-determined FRAND rate should not be the rate for Motorola's patent portfolio, because it is unfair."

Motorola's policy arguments fail because, in fact, all the policy interests run in the other direction. On one side of the ledger are the alarms raised by antitrust regulators and a broad swath of technology companies and manufacturers—patent hold-up and royalty stacking.

24

AB 7-8. An SSO is an oligarchy of the biggest competitors in a field who meet behind closed doors to allocate monopoly benefits to each other, often at the expense of competing technologies. *See Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571 (1982) ("[A] standard-setting organization … can be rife with opportunities for anticompetitive activity."). When one member of the group persuades the others to adopt its technology as the standard, that member is all but guaranteed a healthy flow of royalty revenues. Antitrust regulators tolerate that sort of anticompetitive self-dealing only subject to the condition that members do not exploit the market power they have secured. When a company in Motorola's position breaks its FRAND vow and offers a rate that is exorbitant or discriminatory, the victim has to have a meaningful remedy. Specific performance of the contractual commitment to make an offer at a FRAND rate is the natural choice.

Motorola and its amici do not even address these concerns, much less rebut them. They do not dispute that the district court's approach puts a standards implementer to an untenable choice: If it wants to force an SEP holder to make the offer that it was legally obligated to

25

make, it must decide in advance that it will forgo any of the usual defenses to infringement—for an entire portfolio of patents. AB 55-59. It cannot challenge any patent as invalid or exhausted. It cannot argue that the patent in question is not, in fact, essential and not infringed. Motorola demands that a standards implementer surrender one constellation of rights (the statutory right to test a patentee's declaration of standard-essentiality by putting the patentee to its burden of proving liability, *see* 35 U.S.C. § 282(b)) in order to vindicate another (the contractual right to a FRAND offer). That is not good policy, *see, e.g.*, *Realtek Semiconductor Corp. v. LSI Corp.*, No. CV-12-03451, 2012 WL 4845628, at *5 (N.D. Cal. Oct. 10, 2012), and Motorola and its amici offer nothing to commend such a trade.

Instead, Motorola and its amici address only the other side of the ledger. Motorola warns that "[p]ermitting unwilling licensees like Apple to file breach of contract and equitable claims in response to standard-essential patentholders' lawsuits would have a chilling effect on bilateral cross-license negotiations." MB 37. One amicus speculates that awarding relief here "would create disincentives to negotiate,"

Qualcomm Br. 5, and another warns of a wave for FRAND lawsuits by standards implementers, Ericsson Br. 23-24.

The course of this case belies any suggestion that the availability of specific performance will chill contract negotiations. In the face of Motorola's exorbitant royalty demands, Apple negotiated for three years before filing this suit. It resorted to litigation only after Motorola petitioned the ITC to exclude Apple's smartphones from the U.S. Six years have now passed and the royalty dispute still has no prospect of resolving itself. As the district court found, Apple and Motorola were at loggerheads over the proper FRAND rate. A115. The availability of a judicial forum to set the FRAND rate is not standing in the way of resolving the dispute; it is the only way *to* resolve it. A115-16.

In any event, Motorola's chilling point might be an argument for why a court should not be allowed to set a FRAND rate at all, a position Motorola disavows (at 37). But it is not an argument for the proposition that a court should not set a FRAND rate unless the putative licensee pre-commits to accept the offered license at any price. Moreover, there are plenty of reasons to try to reach a negotiated resolution before running to court. Litigation is expensive, protracted, distracting, and

unpredictable.  And, of course, the putative licensee might not like the license rate the court fixes.

That is why Motorola's amicus is wrong in positing that setting a FRAND rate will systematically "disrupt[]" the FRAND balance "in favor of the prospective licensee."  Qualcomm Br. 10.  Not so.  Who is favored in any particular case will depend on where the court comes out.  Here, for example, if the court had set a FRAND rate in the range of Motorola's 2.25% demand, Apple's negotiating position would have suffered.  If, however, a court rejects a patentee's exorbitant demand, the result is not imbalance, but a needed correction of the market distortion that standardization causes.

In a variation on the litigation floodgates theme, Motorola worries that following the Wisconsin rule would "burden courts with a whole new category of lawsuits over the reasonableness of every material term of a complex patent cross-license agreement."  MB 37.  This, too, is an argument for prohibiting courts from enforcing FRAND commitments, not an argument for depriving standards implementers of the option of accepting or rejecting a license, depending on price.  In any event, Apple

has not asked the district court to determine anything other than price.
Resolving that term will likely precipitate resolution of all the others.

### C.   Apple Does Not Seek An Advisory Opinion

For much the same reasons, Motorola is wrong in arguing that
Apple's breach of contract claims sought "a nonjusticiable, advisory
opinion." MB 33-35. Motorola devotes a page of boilerplate (at 33-34) to
the proposition that federal courts cannot render advisory opinions.
Agreed. But an opinion is not advisory, and a case is justiciable, as long
as the "parties remain adverse, and 'valuable legal rights … will be
directly affected to a specific and substantial degree by the decision of
the question of law.'" *ASARCO Inc. v. Kadish*, 490 U.S. 605, 619 (1989).
What makes a decision "a proper judicial resolution of a 'case or
controversy' rather than an advisory opinion" is "the settling of some
dispute *which affects the behavior of the defendant towards the
plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).

Apple's breach of contract claims met that standard, both before
and after Apple explained that it would not accept an offer without
knowing what it was. First, the parties are adverse and fully prepared
to litigate the questions whether Motorola had complied with its

29

FRAND obligations and what the FRAND rate was for Motorola's SEPs.

Second, that ruling would have related "not to a hypothetical set of

facts, but to a concrete dispute concerning the parties before" the court.

*In re Special Grand Jury 89-2*, 450 F.3d 1159, 1171 (10th Cir. 2006).

Third, by deciding Apple's claims, the district court would have finally

"resolved the issues between the parties" regarding Apple's rights and

Motorola's contractual obligations, MB 34—i.e., whether Motorola is

allowed to adhere to its royalty demand or whether Apple has a right to

a lower offer.  Fourth, the district court would have done so in a way

that "affect[ed]" Motorola's "behavior."  *Hewitt*, 482 U.S. at 761.  At

minimum, a ruling in Apple's favor would have prohibited Motorola

from continuing to make exorbitant demands.  Also, the court's

resolution of this dispute would have bound the parties beyond contract

negotiations, and in future proceedings.  For example, the FRAND

determination would bind the parties in subsequent patent-

infringement actions brought by Motorola or bilateral arbitration to set

license terms.[3]

---

[3] For these reasons, Motorola's cases are inapposite.  In *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948), the challenged agency action was nonfinal and committed to the

Motorola insists (at 34) that an order of specific performance would have been ineffectual and, therefore, advisory, unless Apple agreed to accept. But that ignores the principle that any decision that is "useful in settling the legal predicates for further actions by the parties are not advisory." 13 Wright et al., Federal Practice and Procedure, § 3529.1, at 646-47 (3d ed. 2008). Of course, if Apple had accepted, a license would swiftly have followed. But even if Apple had refused, that choice would still have had binding consequences. For example, Apple would have had no licensee defense in an infringement action and could, if Motorola carried the relevant burdens, have been subject to enhanced damages for willful infringement. *See* 35 U.S.C. § 285. And Motorola's parent Google's consent decree with the FTC

---

President's unreviewable discretion. Thus, the agency action did not "impose an obligation, deny a right, or fix some legal relationship." *Id.* at 113. Similarly, the concrete factual basis for Apple's request distinguishes this case from *H&R Block Eastern Enterprises, Inc. v. Raskin*, 591 F.3d 718 (4th Cir. 2010). There, the Fourth Circuit held that the question whether the federal National Banking Act preempted the application of Maryland's Credit Services Business Act to Block was nonjusticiable because it was based on the untested assumption that Block was a "credit services business" to which the Maryland statute applied. *Id.* at 723-24. That is, the question was nonjusticiable because it was addressed to a hypothetical state of affairs.

31

then would not bar injunctive relief. Decision and Order at ¶ II(E)(3), *In re Google, Inc.* (July 23, 2013).

In very similar circumstances, this Court has held that a decision adjudicating one question contested by adverse parties is not advisory merely because one party's subsequent choices might cause a larger dispute to persist. *Hines v. Sec'y of HHS*, 940 F.2d 1518 (Fed. Cir. 1991). *Hines* questioned whether deciding an appeal of a Court of Federal Claims compensation order under the National Vaccine Injury Compensation Program—which the claimant could later have chosen to reject in favor of pursuing a tort action—would mean issuing an advisory opinion. *Id.* at 1522-23. This Court answered in the negative, reasoning that its "decision as to the denial of compensation *is* a final and conclusive adjudication of a definite and concrete dispute, namely, the petitioner's cause of action against the government *under the Vaccine Program*." *Id.* Notably, "[t]he existence of another possible cause of action (e.g., against a physician, hospital or vaccine manufacturer in tort law) does not make the dispute as to a petitioner's rights under the Vaccine Program any less genuine and does not render our decision merely advisory." *Id.*

That is precisely the situation here.

## III. THE DISTRICT COURT CORRECTLY REJECTED MOTOROLA'S ALTERNATIVE GROUNDS FOR AFFIRMANCE

As alternative grounds for affirmance, Motorola challenges three of the district court's summary judgment rulings: (1) that Motorola entered into binding contracts with the SSOs that required Motorola to license its self-declared standard essential patents on FRAND terms, A97-100, and to make "bona fide" efforts to disclose its allegedly essential patents *before* the SSOs adopted the relevant technical standards, A102-04; (2) that Apple is a "third-party beneficiary" of Motorola's contracts, A100-02; and (3) that Apple's breach of contract claims are not barred by the *Noerr-Pennington* doctrine, A85-87. Motorola also adds two additional bases—never embraced by the district court—for dismissing the case on jurisdictional grounds. All five of Motorola's alternative grounds are baseless.

### A. Motorola's Commitments To ETSI And IEEE Are Definite And Enforceable

The district court granted Apple summary judgment "with respect to the existence of contracts between Motorola and the standards-setting organizations," A100, and found both the commitment to make

an offer at FRAND rates and the commitment to disclose its patents to ETSI to be enforceable. Motorola argues (at 46-52) that both of these requirements are not sufficiently definite to be enforceable.

As a threshold matter, Motorola did not move for summary judgment on this ground. A5476-77 (listing six other grounds on which Motorola sought summary judgment). Instead, Motorola opposed Apple's summary judgment motion by alleging numerous "material questions of fact that cannot be resolved on summary judgment." A6271-72. Throughout its opposition, Motorola portrayed these contract interpretation issues as turning on "bitter[ly] dispute[d]" facts, A6277, that "a reasonable jury could" decide in Motorola's favor, A6280, 6283-86, rendering summary judgment inappropriate. Therefore, this "alternative" argument is waived (as is the one addressed in § III.B below). *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 672 (7th Cir. 1992).

In any event, Motorola is wrong as to both contractual commitments. And its policy arguments for excusing its breach are unavailing.

34

### 1.    Both categories of contractual commitment are definite and enforceable

***FRAND rate***.  "Motorola does not dispute that FRAND commitments are binding and enforceable under proper circumstances." MB 46.  But it argues that "Apple's own unwillingness to license even under a court-determined FRAND rate renders FRAND in these ETSI and IEEE commitments indefinite in this case."  MB 47.  This is just another manifestation of the confusion discussed above (at 2, 23-24) between Motorola's contractual obligation to offer a license and Apple's option to accept or decline the offer.  Motorola's obligations under the ETSI and IEEE contracts are crystal clear.  It must offer a license on reasonable and nondiscriminatory terms.  Because "Motorola's contracts with ETSI and IEEE placed the burden of fair and nondiscriminatory licensing on Motorola, not on potential licensees," A129, Apple's desire to know what the offer is before deciding to accept it does not somehow convert the definite and enforceable FRAND commitments into indefinite and unenforceable ones.

A term that is definite at contract formation does not become indefinite because of later conduct.  Thus, Motorola's cases are inapposite:  Each involved a term that was indefinite from the start.

35

*See Gerruth Realty Co. v. Pire*, 115 N.W.2d 557 (Wis. 1962) (land sale contract "subject to financing" that was within buyer's sole discretion to secure); *Nodolf v. Nelson*, 309 N.W.2d 397 (Wis. Ct. App. 1981) (same); *Dunlop v. Laitsch*, 113 N.W.2d 551 (Wis. 1962) (unenforceable promise—"agreement to agree"—regarding land use).

Contrary to Motorola's assertion, the SSOs did not need to insert a "time is of the essence" provision into their contracts to make them enforceable.  MB 47-48.  The law is that "where no time is fixed in the option for its acceptance the law will imply that a reasonable time is intended." *Fleischman v. Zimmerman*, 45 N.W.2d 616, 618 (Wis. 1951). Here, Motorola told ETSI that it was "prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions" to its SEPs "*to the extent that such [SEPs] remain essential*." A4115 (emphasis added); *see also* A4008 (same); A4638 ("[i]n the event … the standard cannot be practiced without the use of one or more issued patents which are now or hereafter owned, controlled or assigned to Motorola, Motorola agrees to license those patents" on FRAND terms).  Implying the time term in Motorola's SSO option contracts is

therefore straightforward:  Motorola must hold its options open and irrevocable as long as its SEPs remain essential.

Motorola finds something strange about a lawsuit enforcing the right to receive an offer without any "reciprocal" obligation to accept it. MB 48.  But that is the very definition of an option contract.  And the Wisconsin Supreme Court has awarded specific performance of an option contract in a case where the plaintiff had not yet decided whether to exercise its option.  *Fontaine v. Brown Cnty. Motors Co.*, 29 N.W.2d 744, 748 (Wis. 1947).  That case involved an option to purchase real estate that the seller had improved since the time the option contract was executed.  The Wisconsin Supreme Court ordered specific performance at the option price "plus such appreciation in value … as the [trial] court may determine resulted from the improvement." *Id.*  Notably, there was no requirement that the buyer pre-commit to exercise the option no matter what value the trial court assigned to the improvement.  Rather, the court specified that the order "should be so framed as to dismiss the complaint if the [buyer] elects not to pay any increased amount."  *Id.*

37

Motorola contends that upholding the district court's contract analysis here will give standards implementers "perverse incentives to engage in delay tactics, where the putative licensee believes its worst-case outcome after litigation is to pay the same amount it would have paid earlier for a license." MB 48 (citation and internal quotation marks omitted). Not so. The "worst-case outcome" for a party who refuses to even discuss a license is a patent-infringement suit, which results in a royalty determination that is higher than the one it could have negotiated, trebled for bad faith, plus attorneys' fees, and the threat of an injunction.

Motorola also contends that Apple has waived its contractual rights through "delay." MB 49. In other words, after repeatedly faulting Apple for proposing a rule that would improperly incentivize potential licensees to rush to court, MB 42, Motorola chides Apple for negotiating for three years instead of rushing to court. The argument is as incorrect as it is ironic. Apple requested a FRAND offer from the start—in 2007. Moreover, the parties' negotiations have extended the time for performance. *See Clear View Estates, Inc. v. Veitch*, 227 N.W.2d 84, 88 (Wis. 1975) ("Among the actions of an optionor which will

38

constitute … an extension of the time limitation for exercise is his continuing to negotiate past the termination date.").  As the district court found, the parties "continued to engage in license negotiations … for approximately three years," from 2007, when Apple released the first iPhone, until 2010, when Motorola brought this ITC complaint. A71; *see also* MB 56 ("[T]he parties have been negotiating for many years since 2007, and continue to negotiate.").

   ***Disclosure obligations***.  Motorola likewise misses the mark in its arguments concerning ETSI's disclosure policies.  As an ETSI member participating in development of the relevant standards, Motorola submitted technical proposals that included technology that Motorola was simultaneously applying to patent.  But Motorola admits that it did not disclose those patent applications before ETSI adopted the standards.  A104.  The district court granted summary judgment that ETSI's policies required Motorola at least to make "bona fide" efforts to disclose its possibly essential intellectual property rights *before* ETSI adopted the relevant standards.  A102-04.

   Motorola points to an ETSI document that declines to define "timely" and "timeliness" explicitly.  MB50 (citing A12,025).  Motorola

also cites an unpublished, non-peer reviewed study purporting to describe when SSO participants disclose IPR to ETSI.  MB51.  Motorola did not enter either document into the summary judgment record. A6266-89.  Having failed to do so, and having lost the motion, Motorola "cannot raise such reasons on appeal."  *Domka v. Portage Cnty.*, 523 F.3d 776, 783 (7th Cir. 2008) (citations omitted).[4]

Regardless, Motorola's secondary sources have scant persuasive force in comparison with the clear language and purposes of the relevant SSO contracts.  *See, e.g.*, *Johnson Controls, Inc. v. London Market*, 2010 WI 52 ¶ 52, 784 N.W.2d 579, 590 ("[C]ontract interpretation should be based on the language of the policy rather than a court's conjecture about extrinsic information.").  By its terms, ETSI's IPR policy requires disclosure at some time before the "proposal is

---

[4] The ETSI document, an interpretive "guide" issued in 2008 (more than a decade after Motorola undertook its disclosure obligations), "d[oes] not have the same official status as" the ETSI IPR Policy.  A12,021.  And the study by Dr. Layne-Farrar, based on research funded by Motorola's amicus Qualcomm, only looked at the timing of formal disclosure certificates, not whether the IPR was *in fact* disclosed prior to the standard's adoption.  *See* Anne Layne-Farrar, *Assessing IPR Disclosure Within Standard Setting: An ICT Case Study*, at 1 n.1, 7 (Charles River Assocs. Nov. 28, 2011), *available at* http://ssrn.com/abstract=1912198.

adopted." A5743. ETSI requires members submitting a technical proposal to make bona fide efforts to "draw the attention of ETSI to any of that MEMBER's IPR which **_might_** be ESSENTIAL **_if that proposal is adopted_**." A5743 (emphasis added). As the district court observed, "[b]y using the terms 'might' and 'if,' the policy clearly requires members to make efforts to disclose intellectual property rights _before_ a standard is adopted." A102. No other interpretation makes sense. This reading of ETSI's requirements accords with the reason why SSOs impose disclosure obligations. "By failing to disclose relevant intellectual property rights ('IPR') to an SSO prior to the adoption of a standard, a 'patent holder is in a position to "hold up" industry participants from implementing the standard.'" _Qualcomm Inc. v. Broadcom Corp._, 548 F.3d 1004, 1010 (Fed. Cir. 2008) (citation omitted).

Motorola's remaining arguments are non-responsive. On summary judgment, Apple merely sought rulings defining the scope of Motorola's disclosure obligations, _not_ that Motorola violated those obligations. A3726-60. Disputes over the meaning of "bona fide" or "reasonable efforts," MB 51, remain trial issues even after the summary judgment ruling. A105. And Apple never argued, as Motorola suggests

41

(at 51) that SSO participants had to disclose IP at meetings or in any other particular form. A103. Motorola's point that courts should not "interpret[] the standard-setting 'disclosure duty unbounded,'" MB 50 n.5 (quoting *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1101 (Fed. Cir. 2003)), is neither here nor there. Apple did not ask the district court to expand Motorola's contractual duties, just to enforce them.

### 2. Motorola's policy arguments do not excuse its breach

Motorola defends its failure to offer a FRAND rate and its failure to comply with its disclosure obligations by making a series of mistaken and irrelevant policy points. MB 52-55. Motorola suggests that hold-up and royalty stacking are figments of Apple's imagination. MB 53. There is no better evidence that hold-up is real than Motorola itself. As explained above (at 21-22), Motorola has leveraged its SEPs to demand greater-than-FRAND rates and swung the hammer of injunctive and exclusionary relief to force standards implementers to buckle. *See* MB 7 (noting Motorola's substantial licensing revenue since the early 1990s).

Motorola points out that ETSI and IEEE want patent owners to obtain "*reasonable* compensation." MB 53-54. We agree completely,

which is why Apple wants the court to set a *reasonable and non-discriminatory* royalty rate. The PTO/DOJ statement cited by Motorola (at 54) states that an "exclusion order" may be appropriate if the implementer refuses to pay a determined FRAND royalty, but of course an exclusion order does not issue before a finding of infringement. These public policy points do not come close to justifying Motorola's breach of its contractual obligations.

### B. Apple May Enforce Motorola's Contracts With IEEE And ETSI

The district court was correct in ruling that Apple was a third-party beneficiary of the IEEE and ETSI contracts. A100-01. Apple may enforce Motorola's obligations to IEEE and ETSI because the contracts "indicate an intention to secure some benefit to [Apple]." *Pappas v. Jack O. A. Nelson Agency, Inc.*, 260 N.W.2d 720, 725 (Wis. 1978). The express and sole intent of Motorola's contractual commitments to license standards implementers (like Apple) on FRAND terms is to benefit those standards implementers.

Contrary to Motorola's assertion (at 44), it makes no difference whether Motorola intended to benefit Apple specifically because "a third-party need not demonstrate that he, *individually*, was intended to

43

benefit from the contract. Rather, it is sufficient if the third-party demonstrates that he was a member of a *class* of beneficiaries intended by the parties to benefit from it." *Id*. (emphasis added). Apple, unquestionably, is a member of the class of standards implementers intended to benefit from Motorola's FRAND commitments.

That is why every court that has interpreted these FRAND commitments has agreed that a potential licensee is a third-party beneficiary. *See Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d. 1023, 1033-34 (W.D. Wash. 2012) (holding that a standards implementer was a third-party beneficiary entitled to enforce Motorola's FRAND commitments to IEEE); *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 923 (N.D. Ill. 2013) ("[P]otential users of [IEEE] standards … are third-party beneficiaries."). Motorola's "commitments are clearly designed to benefit potential licensees of Motorola's standard essential patent[s] by ensuring that such patents are readily accessible to everybody at reasonable rates." *Microsoft*, 864 F. Supp. 2d. at 1033. Even Motorola's amicus Qualcomm acknowledges (at 17) that standards implementers like Apple are third-party beneficiaries of the SSO-patent holder contracts.

44

Motorola's answering arguments find no support in the language of its contracts with the SSOs. Motorola does not discuss the IEEE contracts at all, much less cite language suggesting that implementers were not intended beneficiaries. MB 43-46. As for ETSI, Motorola merely points out that the SSO has a right to take action against members who violate its policies. MB 43-44. A party to a contract almost always has a right to sue for breach, but that does not cancel third-party beneficiary rights. "Under Wisconsin law, … a contract specifically made for the benefit of a third party" may be enforced by that third party as well as the party to the contract. *Kontowicz v. Am. Std. Ins. Co.*, 2006 WI 48 ¶ 89 n.24, 714 N.W.2d 104, 125 n.24. Thus, both ETSI and standards implementers like Apple have a right to demand performance.

The three cases Motorola invokes all involved contracts quite different from Motorola's contracts with the SSOs. *Schilling by Foy v. Emp'rs Mut. Cas. Co.*, concerned a teacher's employment contract that was silent on the parties' intent to benefit third parties such as the plaintiff student. 569 N.W.2d 776, 781 (Wis. Ct. App. 1997). *Sussex Tool & Supply, Inc. v. Mainline Sewer and Water, Inc.*, involved a public

45

works contract, a class of contracts that are subject to a uniquely stringent test for third-party beneficiary status. 605 N.W.2d 620, 624 (Wis. Ct. App. 1999). And in *D'Amato v. Wisconsin Gas Co.*, the "main purpose" of the contract was "unrelated" to the clause the plaintiff sought to enforce as a third-party beneficiary. 760 F.2d 1474, 1479 (7th Cir. 1985). Here, of course, the main purpose of Motorola's SSO contracts is to further the development of widely adopted technical standards.

## C.    The *Noerr-Pennington* Doctrine Does Not Bar Apple's Breach Of Contract Claims

The district court ruled that "applying [*Noerr-Pennington*] immunity to Motorola from Apple's breach of contract claims is not appropriate." A86. The court explained that although "the First Amendment protects Motorola's right to petition the courts to enforce its patents," "Apple's breach of contract claims are based on the theory that Motorola agreed by contract that it would not enforce its patent rights until it offered a license to Apple on fair, reasonable and nondiscriminatory terms." A86-87. "In other words, Apple contends that Motorola waived some of its petitioning rights through contract." *Id*. The court cited authority for the common sense proposition that it

46

"would be improper to use the *Noerr-Pennington* doctrine to bar Apple from enforcing that contract." *Id*. (citing *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 932 (N.D. Cal. 2012)). A party cannot promise not to sue and then claim that it has a First Amendment right to escape the promise.

Motorola's argument depends on a disputed issue of fact: It argues that it did not waive the right to sue when "it is subject to incorrigible infringement by an unwilling licensee." MB 41. But, as explained above (at 2-3, 23-26), Apple is a willing licensee and has never been found to infringe a single Motorola patent—and cannot be found to be an unwilling licensee or recidivist infringer as a matter of law, certainly not while "constru[ing] all facts in the light most favorable to [Apple] and draw[ing] all reasonable inferences in [its] favor." *Mt. Sinai Hosp. Med. Ctr. v. Shalala*, 196 F.3d 703, 707 (7th Cir. 1999). Motorola's *Noerr-Pennington* argument, which depends on its unproved and disputed allegations of infringement and unwillingness, cannot prevail in this posture.

Motorola cites several cases (at 40), but none of them involves application of the *Noerr-Pennington* doctrine to overcome a contractual

47

obligation not to sue.  None even suggests—let alone holds—that the First Amendment considerations underlying the doctrine apply to contract suits.  *Cf. Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (applying *Noerr-Pennington* to state-law tortious interference with prospective economic advantage claim); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (state-law tortious interference with contract claim and federal civil rights claim); *Tarpley v. Keistler*, 188 F.3d 788, 795 (7th Cir. 1999) (civil rights claim); *New West, L.P. v. City of Joliet*, 491 F.3d 717, 719 (7th Cir. 2007) (claims under Supremacy Clause, 42 U.S.C. §§ 1982 and 1983, and Fair Housing Act).

Moreover, as in the antitrust context (*supra* at 4-7), Motorola's *Noerr-Pennington* argument rests on a false premise: that Apple's breach of contract claims are based on Motorola's patent-infringement litigation.  Motorola writes:  "There is no dispute that Apple's breach of contract … claims, just like its antitrust claims, sought to recover only litigation expenses in defending against Motorola's patent infringement suits."  MB 40.  This is wrong.  Apple's breach of contract claims seek

only specific performance, not damages, and have no relationship at all to Motorola's infringement suits.  A3296.

Finally, Motorola argues (at 41) that standards implementers may present claims that SEP holders have violated their SSO obligations as "affirmative defenses" in patent infringement actions.  That is no reason to expand the scope of the *Noerr-Pennington* doctrine.  Apple's contract claims seek an order of specific performance (and others in Apple's position might seek money damages), relief that even a successful affirmative defense could not secure.  And Motorola's dire prediction (supported by nothing but its own say-so) that allowing Apple's claims to proceed will "launch … a whole new wave of stand-alone contract litigation," MB 42, does not justify the unprecedented expansion of the *Noerr-Pennington* doctrine that Motorola urges.  For one thing, Motorola's predicted "wave" of lawsuits is imaginary.  *See supra* at 26-28.  And, as explained above (at 27), Apple brought these counterclaims only after years of negotiations that Motorola cut short by seeking exclusionary relief from the ITC.

### D.    Apple Has Standing

Motorola contends (at 35) that Apple's "claimed injuries were unredressable by any court order."  But it focuses on the wrong injury. As Apple explained to the district court, "the harm that Apple has sued to redress is the harm of not receiving a FRAND offer from Motorola." A27,889.  Apple seeks the benefit of the promise Motorola made:  that it will make a FRAND offer, which will enable Apple to assess the options and either accept the license and avoid further litigation or reject the license and incur the expense and risk of patent suits, which it has, so far, beaten.  A district court order setting a FRAND rate and requiring Motorola to make an offer at that rate most certainly does redress Apple's injury.  At the moment, Apple has no FRAND offer to assess, but once the district grants Apple's relief, Apple will have one. Motorola does not dispute this.

That is why Motorola gets no support from the principle that "[s]tanding is properly denied where ultimate redress would depend on intervening actions beyond the court's control."  MB 35.  Once the district court sets a FRAND rate and orders Motorola to make an offer at that rate, the injury is redressed and the court's work is done.  No

other "intervening actions" will get in the way of Apple's receipt of that FRAND offer.

Motorola's standing argument is premised on a different injury. It contends that Apple's injury is unredressable because "*any end to the parties' patent disputes* would depend on Apple's decision whether to accept a court-ordered rate and resolution of many additional material terms of any license." MB 35 (emphasis added). The injury Apple seeks to redress is not the injury of having a dispute with Motorola, nor even the injury of not having a license agreement. Those are Apple's *motives* for pursuing this litigation. But redressability is about what relief the plaintiff demands (here, a FRAND offer) not about what ultimate objective the plaintiff may harbor (a license and litigation peace).

Put another way, Motorola is wrong to assume that a party lacks standing unless the relief requested will put "an[] end to the parties' patent disputes." MB 35. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982); *see Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (same).

51

Thus, the cases Motorola invokes are inapposite. They are all cases in which courts could not have ordered *any* effective relief. For example, in *Microwave Acquisition Corp. v. FCC*, the appellant (Microwave) lacked standing to challenge an FCC decision approving the sale of a telecommunications business (Qwest) to Microwave's competitor (Southern Pacific). 145 F.3d 1410, 1411 (D.C. Cir. 1998). Microwave's alleged injury—the breach of its own contract to acquire Qwest—could not be redressed by review of the FCC's decision because even reversal would not have resulted in the transfer of Qwest (which had already been sold) to Microwave. *Id.* at 1413. *See also Cherry v. FCC*, 641 F.3d 494, 495-96 (D.C. Cir. 2011) (no standing because review of FCC's decision could not have remedied the shareholder's injury).

## E.    Apple's Claims Are Ripe

Motorola argues that Apple's "refusal to accept any court-ordered rate also rendered its breach claim unripe for adjudication." MB 36. The district court rejected a similar argument. Motorola had argued that Apple's breach of contract claims were not fit for resolution until Motorola established or Apple conceded infringement. A32. The district court disagreed, reasoning that "the parties dispute whether

Motorola is required by contract to make fair, reasonable and non-discriminatory offers to Apple and whether Motorola has done so. Apple's claims are not based on hypothetical, speculative or illusory disputes; rather, they are based on allegations of concrete and ongoing injuries that are sufficiently imminent to warrant judicial action." A34-35 (internal quotation marks and citations omitted).

That same reasoning applies with equal force to Motorola's current argument. Apple's breach of contract claims continue to rest on concrete facts that supply an adequate basis to decide the contested issues and allege ongoing injury in the form of deprivation of a FRAND offer. And a case is ripe as long as it involves an "actual, concrete conflict[]" and not a "'hypothetical, speculative, or illusory dispute.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992)).

Motorola's reliance on *Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996), is therefore misplaced. There, a breach of contract claim brought in 1991 was unripe because the contract term at issue gave the defendant until 1997 to perform. Thus, as even the plaintiff conceded, no claim for breach would have accrued until after the time for

performance had expired. *Id.* at 572-73. Here, by contrast, Motorola's duty to make a FRAND offer arose at the time of its contracts with the SSOs, and Apple is now, and was in 2011 (when these counterclaims were brought) entitled to immediate performance. Similarly, none of Motorola's district court cases bears on the ripeness analysis because none involved both an enforceable contract and a live dispute.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING APPLE'S DECLARATORY JUDGMENT CLAIMS

### A. Declaring A FRAND Rate, Or Declaring That Motorola's Offer Was Not FRAND, Would Have Resolved Uncertainty And Advanced The Parties' Licensing Negotiations

Our opening brief explained why a declaratory judgment of the FRAND rate, or more modestly still, a declaration that Motorola's 2.25% offer was or was not FRAND, would have "settle[d] the legal relations in dispute and afford[ed] relief from uncertainty"—the precise purposes of the Declaratory Judgment Act. AB 62-63 (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007)). Specifically, we demonstrated that the declaration Apple sought would have broken the parties' negotiating impasse and marked a clear path to a speedy resolution of this licensing dispute.

54

Motorola responds by repeating its inaccurate assertion that Apple requested only an "advisory opinion." MB 56. We dispose of that assertion above (at 29-33). But we note, too, that this contention is inconsistent with the district court's clear conclusion that it had jurisdiction to decide Apple's declaratory claims. A174-75, 191; *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory judgment jurisdiction proper where, as here, "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality'") (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)).

Motorola's attempt to soft-pedal the significance of its 2.25% royalty demand in the parties' negotiations fares no better. Motorola makes the odd claim that its 2.25% demand was not, as Apple has explained, an "insurmountable roadblock" to reaching a license agreement because the parties "have been negotiating for many years since 2007, and continue to negotiate," MB 56—as though negotiations that last six years reflect progress rather than stalemate. And Motorola's characterization of the course of the parties' negotiations misstates the record. Apple's lead negotiator, Boris

55

**Confidential Material Omitted**

Teksler, did not testify, as Motorola claims, that ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

MB 56 (citing A15,311-12).  In fact, on the *very page of the deposition that Motorola cites*, the following exchange with Mr. Teksler appears:

████████████████████████████████████████████████

████████████████████████

████████████████████████████████

A15,311.

Motorola's contention (at 57) that Apple can litigate the FRAND rate in the parties' separate infringement proceeding is specious.  As recounted in our opening brief (at 58, 67-68), the case involves only three of Motorola's patents, so even if this Court were to revive the case and remand, Apple could, at most, secure a judicial determination of the FRAND rate as to those patents.  Here, Apple sought a declaration of the FRAND rate for Motorola's entire SEP portfolio, which includes hundreds of patents.  Moreover, Apple may prevail on non-FRAND defenses such as invalidity or non-infringement, obviating the need for rate setting in the infringement case.

## B.  The District Court's Dismissal Of Apple's Patent Misuse Claim Was Based On Erroneous Conclusions Of Law

Motorola does not contest that the district court's dismissal of Apple's patent misuse claim was based on erroneous conclusions of law. The district court held that Apple could not obtain an order of unenforceability because (1) Apple had not shown why "monetary damages would be inadequate relief"; and (2) such an order was "far out of proportion to any harm that Apple has suffered or is likely to suffer in the future."  A186-87.  As we discussed in our opening brief (at 70-71), an order of unenforceability is the only permissible remedy for patent misuse and monetary damages are not available.  *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997).

Motorola argues that the district court was nonetheless within its discretion in dismissing Apple's patent misuse claim because "that claim could have been more efficiently tried as a defense" in the litigation before Judge Posner.  MB 58.  But Judge Posner never reached Apple's patent misuse defense; he dismissed Motorola's claim for infringement of the '898 patent outright.  That dismissal is currently before this Court and may yet be affirmed, in which case there will be

no remand during which to litigate patent misuse. It would thus be premature to dismiss this declaratory judgment claim in favor of a federal proceeding that may or may not ever reach the relevant question. *See Med. Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 381-82 (7th Cir. 2010).

## V. THIS COURT HAS EXCLUSIVE APPELLATE JURISDICTION BECAUSE APPLE'S DECLARATORY JUDGMENT CLAIMS ARISE UNDER FEDERAL PATENT LAW AND RAISE PATENT-LAW QUESTIONS

Apple's opening brief demonstrated that a complaint seeking a declaratory judgment of, among other things, patent unenforceability, "arises under" federal patent law, for purposes of 28 U.S.C. §§ 1295(a)(1) and 1338(a), because the declaratory defendant's hypothetical complaint would assert patent infringement. AB 73-74. That proposition is hornbook law. *See, e.g.*, *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984 (Fed. Cir. 2009); 8 Chisum on Patents § 21.02[1][d][i] (2012).

Motorola does not even try to address Apple's argument. Motorola contends that Apple's contract-based claims do not turn on patent-law questions and seek "remedies far removed from any patent case." MB 24. But Apple has never premised jurisdiction on its contract-based

claims. Rather, Apple rests its jurisdictional position on its claims for declaratory judgments that Motorola's SEPs are unenforceable and that Motorola may not enjoin their infringement. *See* A3292-94 ¶¶ 181-89, A3296 ¶ 197(*l*), (m). Specifically, those claims support jurisdiction because Motorola's hypothetical coercive complaint, at which those claims are directed, would arise under federal patent law.

Consequently, Motorola's cases are inapposite. In *Lab. Corp. of Am. v. Metabolite Labs., Inc.*, the declaratory judgment plaintiff sought a declaration "that it did not breach a license agreement," such that the declaratory defendant's "hypothetical claim would have been a breach of contract claim" arising under state law. 599 F.3d 1277, 1283-84 (Fed. Cir. 2010). And *Bonzel v. Pfizer, Inc.*, where the complaint pleaded no declaratory judgment claim and alleged only breach of contract, lies even farther afield. 439 F.3d 1358, 1363 (Fed. Cir. 2006).

Motorola also contends, without a single supporting authority, that this Court lacks jurisdiction because Apple's declaratory claims have been litigated separately from Motorola's infringement claims. MB 25. As Motorola (but no case, statute or treatise) sees it, whether a declaratory claim arises under federal patent law turns on whether the

declaratory plaintiff's subsequent "litigation choices" reflect a "tie" between the declaratory and coercive claims. MB 25. That is simply not the law. As this Court has "repeatedly recognized," "for declaratory judgment suits, the character of the action is judged based on the declaratory judgment defendant's hypothetical complaint," not the forum in which any claims are actually litigated. *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349-50 (Fed. Cir. 2011). Here, Motorola's *actual* ITC complaint asserted patent infringement, a cause of action that arises under federal patent law. *Id.* at 1350. Presumably recognizing that well-established legal framework, Motorola told the district court that "[a]ll of Apple's claims arise out of, or respond to, the patent infringement claims that Motorola has asserted against Apple in the ITC and other district court actions." A1669.

Moreover, what Apple did after filing its counterclaims is immaterial. "[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought, and … after vesting, it cannot be ousted by subsequent events." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). Nor did Apple "choose" to remove its declaratory counterclaims from the ITC, as Motorola suggests. *See* MB 21, 25.

Rather, 19 U.S.C. § 1337(c), which provides that an ITC respondent "shall" remove any counterclaims to federal district court, required Apple to do so.  And Apple did not oppose Motorola's request to consolidate the declaratory claims with an infringement action Motorola brought in federal district court for the Western District of Wisconsin (No. 10-CIV-662-BBC, transferred to the Northern District of Illinois and renumbered No. 11-CIV-8540) because the claims were unrelated. Apple sought an injunction *against* that action, so requiring Apple to assert its claims *in* that action would have made them ineffectual. A2448-49.

In addition, Apple's opening brief also explained that its declaratory claims require the resolution of substantive patent-law questions, an independent basis for jurisdiction.  AB 75.  Even Motorola's authorities recognize as much.  *See, e.g.*, *Lab. Corp.*, 599 F.3d at 1283 ("[I]ssues of … enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a).")).  Motorola does not answer Apple's point that valuing Motorola's SEPs or determining whether Motorola has misused them

implicate patent-law issues squarely within this Court's exclusive

purview.[5]

---

[5] Motorola's opposition to jurisdiction here is inconsistent with its position in another appeal. *See* Appellants' Opp'n to Microsoft's Mot. To Transfer, *Microsoft Corp. v. Motorola, Inc.*, No. 14-1089, Dkt. No. 19 (Fed. Cir. Dec. 5, 2013) (motion to transfer pending). There, Motorola argues that a "state-law contract claim implicated substantial questions of federal patent law" because "the district court determined that it had to establish the royalty rate for Motorola's patents as part of Microsoft's contract claim, introducing the need for a patent damages analysis." *Id.* at 15, 17.

## SUMMARY OF CROSS-APPEAL ARGUMENT

Motorola argues that the district court should have dismissed Apple's breach of contract and declaratory judgment claims with prejudice. The district court was correct—and certainly did not abuse its discretion—in concluding that where, as here, "a court dismisses a claim without reaching the merits, it should dismiss the claim without prejudice." A191.

## CROSS-APPEAL ARGUMENT

## DISMISSAL WITH PREJUDICE IS INAPPROPRIATE BECAUSE THE DISTRICT COURT DID NOT REACH THE MERITS OF APPLE'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS

Recognizing that its cross-appeal merits little discussion, Motorola devotes a scant three pages (at 59-62) to it. Motorola has the law backwards in arguing that the district court should have dismissed Apple's contract and declaratory claims with prejudice. The court's decision to dismiss those claims without prejudice was not only well within its discretion, it was the only legally defensible choice. Dismissal with prejudice "is a harsh sanction which should usually be employed only in extreme situations." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).

The district court dismissed the breach of contract claim because it concluded (albeit, erroneously, *see* § II above) that it was unable to grant Apple relief that would resolve the parties' dispute. A181-82. That is not a ruling on the merits. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773-74 (7th Cir. 2002) (affirming dismissal of case as moot where no remedy was available). Motorola admits that the district court did not reach the merits of Apple's claim for a declaratory judgment that Motorola's offers were not FRAND. MB 55-57. And the declaratory judgment patent misuse claim was not dismissed on the merits either. The district court recognized that "[u]nder different circumstances, it may be appropriate for a court to entertain Apple's requests for declaratory relief and consider the merits of Apple's claims," e.g., a future infringement suit. A193.

Motorola disputes none of the above, but nonetheless argues that the district court should have dismissed Apple's breach of contract and declaratory judgment claims "with prejudice." MB 59. But Motorola's brief confirms that the dismissal was not on the merits. Motorola states that Apple's claims failed because Apple did not establish a "justiciable" case. MB59. Dismissal for non-justiciability is not on the merits, *Univ.*

64

*of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332-33 (Fed. Cir. 2009), and properly leads to dismissal without prejudice, *id.  See also, e.g., Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011).

Motorola argues (at 61) that the district court reached the merits of the declaratory judgment claim in finding that Apple failed to satisfy the equitable prerequisites for an injunction.  *See* A187.  But Apple did not need to satisfy the *injunction* standard to obtain a *declaratory judgment*.  *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

Motorola also emphasizes that the district court "expended considerable resources ruling on detailed summary judgment briefings, well over a dozen motions *in limine,* and multiple *Daubert* motions." MB 60.  Of course, no one knew that better than the court itself, yet the court nonetheless thought dismissal without prejudice appropriate. And Motorola bears equal responsibility for the advanced stage of the suit at the time of dismissal.  Motorola's eleventh-hour demand that Apple be ordered to execute a license as a condition for specific performance relief, A23,932-37, came just one week before the trial's scheduled start date—even though Apple requested specific performance in its complaint, A3296 ¶ 197(h).  In any case, what

65

matters is the basis for the district court's rulings.  Because the

dismissals were not on the merits, dismissal without prejudice was the

proper course regardless of the effort expended prior to reaching that

outcome.  And contrary to Motorola's suggestion (at 61), Apple's decision

voluntarily to reduce its damages claim does not make dismissal

without prejudice inappropriate or unfair.  *See, e.g.*, *Wells Fargo Bank,*

*N.A. v. Younan Props.*, ___ F.3d ___, 2013 WL 6326597, at *2 (7th Cir.

Dec. 5, 2013) (noting that voluntary dismissal is ordinarily without

prejudice).

Motorola does not allege the dismissal without prejudice was a

legal error, was based on clearly erroneous fact findings, or was based

on a lack of evidence rationally supporting the decision.  Motorola just

disagrees with how the district court exercised its discretion.  But abuse

of discretion review "is limited to determining whether the judge

exceeded the bounds of permissible choice in the circumstances, not

what we would have done if we had been in [her] shoes."  *Int'l Kennel*

*Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).

Cases where a court's choice to dismiss without prejudice constitutes an

abuse of discretion are rare.  Indeed, Motorola does not cite a single

case so holding.[6]  Here, the decision was the only possible course

because the dismissals were not on the merits.

---

[6] In the cases Motorola cites, the district court "acted within its discretion" in dismissing with prejudice.  These cases do not suggest that dismissal without prejudice was reversible error.  *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1988).  In any event, these cases are inapposite.  In *Sicom*, this Court affirmed the dismissal with prejudice of a patent-infringement suit *that had been dismissed without prejudice once already*.  *See* 427 F.3d at 980.  In addition, the plaintiff had failed to object to dismissal with prejudice in the district court.  *Id.*  And in *Textile Prods.*, dismissal with prejudice for lack of standing to sue under 35 U.S.C. § 281 was logical because there was no prospect that the plaintiff licensee could obtain the rights necessary to establish standing.

# CONCLUSION

This Court should remand for a trial on Apple's antitrust, breach of contract, and declaratory judgment claims. In the alternative, this Court should affirm the dismissal of Apple's breach of contract and declaratory judgment claims without prejudice.

Dated: December 19, 2013                Respectfully submitted,

/s/ E. Joshua Rosenkranz
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2013, I caused the

nonconfidential version of the Response and Reply Brief of Plaintiff-

Appellant Apple Inc. to be electronically filed with the Clerk of the

Court using CM/ECF, which will automatically send e-mail notification

of such filing to the following counsel of record:

Brian Cosmo Cannon
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Email: briancannon@quinnemanuel.com

Edward J. DeFranco
David Morad Elihu
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Email: eddefranco@quinnemanuel.com
Email: davidelihu@quinnemanuel.com

Kathleen M. Sullivan
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
22nd Floor
New York, NY 10010-1601
Email: kathleensullivan@quinnemanuel.com

David A. Nelson
Stephen A. Swedlow
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Email: davenelson@quinnemanuel.com
Email: stephenswedlow@quinnemanuel.com

*Attorneys for Cross-Appellant*
*Motorola Mobility LLC*

/s/ E. Joshua Rosenkranz
*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE
UNDER FEDERAL RULES OF APPELLATE PROCEDURE
32(a)(7) AND FEDERAL CIRCUIT RULE 32**

Counsel for Plaintiffs-Appellants Apple Inc. and NeXT Software, Inc. certifies that the brief contained herein has a proportionally spaced 14-point typeface and contains 13,090 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, and Table of Abbreviations.

Dated:      December 19, 2013          Respectfully submitted,

                                                    /s/ E. Joshua Rosenkranz
                                                    *Attorney for Plaintiff-Appellant*